Good morning. My name is Ellen Dulsol and I represent the United States. I'd like to save five minutes of my time for rebuttal, if I may. The government's appeal in this case involves interpretation of Section 83C3 of the Internal Revenue Code. And the question here is whether Ms. Strom can use that provision to defer on the tax valuation and recognition of income from her stock options that she received from her employer, emphasis from the ordinary date of recognition, which would be the exercise dates of the options, which ranged from 1999 through early 2000, until December 23, 2000, as the district court held. The general rule under Section 83 of the Internal Revenue Code that governs receipt of property as compensation, which is what we have here, generally provides that the income from the property has to be recognized and valued on the first date that the stock ceases to become non-transferable or subject to a substantial risk of forfeiture, whichever is first. And the particular provision here was enacted to deal with the special situation where a taxpayer faced potential liability under Section 16B of the security laws. There were several cases, such as the Horwath and Colon cases, which are cited in our briefs, where before Section 83C3 was enacted, taxpayers tried to claim a deferral under 83A. And the court said, well, technically the property can be transferred to a third party and isn't forfeited, but yet the taxpayer faced, in all those cases, a virtual certainty of if she sold the property, facing liability under Section 16B, which calls for discouraging any profits from sale of the property to the corporation. Can I ask what's probably, may very well be a silly question, but I wonder, I mean, there may be a very simple answer to this, but I know that there's a reg that says that if the retention of the property depends on continued employment in general, having nothing to do with 16B, it's subject to a substantial risk of forfeiture. So why isn't it? I'm sorry, what was the question exactly you were asking? I'm asking, I didn't finish yet. Okay. All right. What I'm asking is, why isn't, this property, as I understand it, assuming, your position is that she got it, she acquired it when she acquired the right to have options in the future. It was in 1998. Right. But her right to get those options was contingent on her continued employment or on certain profit margins or whatever, right? In a few instances, there were some profit requirements. I'm sorry? In a few instances, some of the options had, there was a requirement of certain profits being met, but generally, they were contingent on continued employment only. Right. Even the ones that were contingent on profits. So why weren't they subject to a substantial risk of forfeiture, just because they were contingent on her continued employment? Well, I think generally the courts have not, and the interpretation of Section 83 has been that when you receive the options, and it's based on some sort of very basic requirement like continued employment, that you, I mean, are you saying, why isn't there a Section 83A argument just on that alone? Is that your question? I think, and I haven't, because it wasn't an issue in this case, gone through all these regs, but I think there are specific showings that have to be made to show that there's a substantial risk of forfeiture, and when it's merely the continuation of time and maintaining employment, that that's not generally considered enough to create the substantial risk of forfeiture. And certainly we made an argument below that we fell into any of the other exceptions that might have created a substantial risk of forfeiture. And so I think, you know, the record hasn't been created to establish that a Section 83A argument would apply here. But I think when you look to Section 83C3, which deals with Section 16B, that section really was designed to be in par materiae with Section 83A, and under that section there's a deferral only based on, you know, from the time that the property is considered received, which with a grant of options is the time that the options are granted for a six-month window thereafter. And taxpayers' theory that she could be subject to 16B liability much later is one that's really reaching and trying to argue that the vesting of the options is the purchase, and that's contrary to securities law. And I think what really, and I guess I would go back, as I'm thinking, I'm going back to your question about the 83A liability. I think also that was not a basis for deferral that was claimed by the taxpayer initially, and I think in a case where there might have been an argument for deferral under 83A. And she pursued that. So why, what's odd here is obviously you're representing the government caught taxes, and there's a, but you're wrapping in the securities law. Because you overlap your own. Well, right. But the interests are somewhat different. The government's interests in the two are somewhat different. And then obviously your interest is to have a narrow view of how 16B applies here. And if you are a securities lawyer for the government, you might have the opposite. Well, I think that what section, what we have here is a statute that needs to be, that's ambiguous because when you could be subject to section 16, suit under section 16B, if you're a securities, as you said, a securities lawyer trying to argue for breath, you could argue there could be a potential suit for a very long time. And in fact, you could come up with theories that could create an indefinite period of liability, and therefore an indefinite period of deferral of tax. And I think that's the problem with this statute. It's ambiguous that it doesn't draw any line of demarcation where it sort of cuts things off and says so if you could be liable, you know, if you could create a theory of liability under 16B, you could just keep on deferring forever. So why is the government's position as to what the subject-to-suit means? I think the subject-to-suit, our position is that there has to be some reasonable probability of success on the merits in a suit, something akin to the idea of there being a substantial risk of forfeiture under section 83A. Because I think reading the statute as a whole, it's all intended to have a real risk of losing the stock. And if a securities lawyer could come in and make a viable argument sufficient to survive a motion to dismiss, is that good enough? I think it's not good enough. And I think every other case that's addressed this issue, except for this district court, has held the case that the court should not. I thought there is no other case addressing the subject-to-suit language. Is there? I think the Hernandez case, which is cited in our brief, specifically addresses and talks about it needs to be a successful suit and talks about But you're not taking that position, and it can't be right because it doesn't say that. I think You're not taking the position that it has to be a successful suit. Well, the Hernandez court says you have to evaluate whether the standard of liabilities for under 16B are met and whether there's a successful suit can be brought. And I think that's what that court said. And I think that is one approach that could be taken. I think, you know, it is at the very least a chance of a suit that has some probability of success because I think even in Filo's case under 83A, this court said you have to look at the chances of success of the suit. And why isn't the ability to survive a motion to dismiss sufficient to meet the standard? Well, I think that's a very minimal standard here. And what the district court held here is that it just has to be enough to get past Rule 11 to be a non-competitive suit. But I'm suggesting something a little different. It has to be enough to survive a motion to dismiss. Why isn't that good enough? Well, I think the motion to dismiss looks at all the allegations favoring the moving party and is a very minimal standard as well. And I think it probably would be something higher than that. But certainly it would be higher than the standard that the district court applied here. And I think the concern is if it's too minimal a standard is that there's room for abuse because if a taxpayer can come up with an argument under 16B, then that taxpayer can get the benefit of hindsight to come in and argue for a deferral if they've taken the gamble and waited to sell their stock and the stock went down instead of up. And then they can try to take advantage of the tax laws. And I think it's important to have a high enough standard that doesn't open the door to that sort of abuse in terms of the taxpayers having the benefit of hindsight. I think it's also important to note. So then we have to know what is the standard you're arguing for? First of all, whatever you do, you're adding to the language because the language just is subject to suit. We all have some instinct that they can't mean any old suit. It has to have some kind of viability. So the question is what degree of viability and how do we know whether this has it? Well, I think the analysis has got to be essentially the same sort of analysis that applies under Section 83A. And I think that the case law under that section, including this circuit's case law, calls for looking at what are the chances of success of the suit and is there a real chance and is this a situation where the taxpayer really is potentially facing liability. And I think it has to be something more than just getting past the frivolity bar or even the mere motion to dismiss bar. And there's got to be some evidence that really supports the possibility that this taxpayer But if you get through a motion to dismiss, then you're saying it's legally viable and the question is do you have the facts and why isn't that good enough? Well, I think you have to show that We're not really talking about facts. We're talking about legal theory. Well, I think there are facts that have to be shown in order to establish succeeding liability. And I think that's part of showing if the facts aren't present, you're not going to have a situation where there's a real risk of liability. But here, the facts, we know the facts are that the vesting was into the period. I mean, the facts and what you would allege in a complaint are true. In other words, they did not vest when she acquired the options. They did not. And she could not have acted upon them at that point. So if there was a complaint that said we want your profits back starting from when they vested, why wouldn't that be a viable theory? Well, I think the question is then are all the other elements of Section 16B liability present? And I think that's a broader question than maybe the one issue that might come up in 16B. I mean, there are questions regarding, I mean, in a motion to dismiss, you might just be addressing one legal issue challenging the case. But there are questions then about, well, you know, during what period was she an insider? And we're not necessarily just dealing with this case. We're dealing with a standard that's going to be applied on a broader basis. And I think being able to come up with, you know, enough of a case to really establish that this taxpayer is risking, you know, losing the stock if she sells. I mean, because the design of the statute is really aimed at providing a deferral provision, which I don't think should be expanded, it should be true restrictively, to just to provide deferral in a place where the taxpayer really needs this kind of protection, because if she sells, she's going to encounter this type of liability. And I think it needs to be a realistic chance. And our position would be that the standard should be something higher that reflects a realistic chance. And it's consistent with this Court's holding in Theophilos regarding what's a substantial risk of forfeiture under Section 83A. And the thing that the argument that you're saying is not viable is her argument that you wait for vesting to start the period running. Well, I think, you know, as the Montgomery Court said, I think it's very settled that that's not a viable argument. But I think, you know, certainly with the stock market plummets we've had of late, it's likely to have other cases that come before the Court where you have a similar analysis that has to be made. And I think a standard needs to be set forth that encompasses things that might not be in this case. Yes. And the Court said this particular argument isn't going to be viable after this case. Right. And it barely just said it passed the Rule 11 bar here. And I think just something that's ‑‑ Where did the Montgomery case say that's not a viable argument? I'm sorry. Where did the Montgomery case address that? I think the Montgomery case on page 57 of that opinion talks about it being a ‑‑ it doesn't actually address that the vesting is not a viable argument. Exactly. It does not. But it does say that it's well settled that the grant of the option is. Yes. But it doesn't really deal with the vesting problem. Yes. That is correct. I meant that the district court here said that that was not a viable argument. And it really was looking to cases that it said that it's established that the grant is. How do you think it would be better, if possible, in this case, which is not a securities case, if we didn't make a securities ruling but just decided something about the viability of a case but not as the district court did actually go to the merits on it? Well, I don't think it's necessary to go into the merits of the securities issue, but I think it is necessary to draw a line that's higher than what the district court drew. And I think that this court then can find that the situation didn't meet that line. And so I think that's appropriate. I would like to turn to just one other issue before my time expires. I think I'm not even saving much for rebuttal. But that is, I think the district court fundamentally erred in failing to apply Treasury Regulation 1.83.3J and giving this deferral a snowballing effect. The regulation is very clear that the deferral period is only a six-month window from each purchase. And so after each purchase, there's a six-month period of deferral. So even if the vesting date were the purchase date, we don't have this snowballing referral here. And I think if the court should reject the government's argument in this case, which I absolutely don't think it should. As a practical matter, that just cuts out like the end of last month or something? No, for each purchase. Say like when stock was vesting in December of 1998, which I think was one of the first vesting dates, then six months after that, that stock has to be included in income. And so you value the stock six months after that. It doesn't continue to snowball so that the whole thing gets deferred. Well, what the district court is facing, though, is that can this taxpayer sell this stuff? And the answer is because the stock is considered fungible, they're going to count any sale as being a violative stock. Well, that is true. The securities law worked that way. But the regulation, when it was adopted, Treasury looked at this and said, we believe the tax laws do not work this way. Doesn't that go directly against the statute? Because the statute says if she can't sell it, then it doesn't count. Well, I think this is the same sort of line drawing we have to take when deciding, you know, what could be subject to suit. And the Treasury Department has looked at this and looked at what Congress's intent is in the legislative history and gone along. Well, the subject to suit is perhaps arguable, but this is directly in the statute. Well, I think, Your Honor, if you take the statute literally, if you had, say, a purchase of stock in year one and your six months passes and there's no sale and you're out of 16B's window, then in year five, if you then go make another purchase and then within six months you go back and sell your stock you got in year one, then the deferral applies. And that would be chaos to the tax laws. I mean, if you take it literally. Well, it seems it would be chaos to securities laws, too, if that was actually true. But I don't think it is actually true. I think it doesn't matter for the securities law's purposes whether you're when you have a matched sale and purchase, whether the stock you sell is the same stock you purchased. Yes, but the hypothetical you just gave us wouldn't prevail under securities law. That person would not be subject to the six-month rule for that entire five-year period. Yes, but if you read the tax statute literally, it says if the sale of the property that was required causes you to be subject to suit under 16B, then as long as you could be subject to suit, there's a deferral. And I think that's the sort of extreme that's not allowed. And I think there's also the situation of if you allow this deferral to go on for more than six months, you have a situation where, you know, the taxpayer doesn't need protection. And I think you have a situation where you have the taxpayer being able to make continued purchases and sales, even in little amounts, and extend the 16B liability. And it creates a situation where the taxpayer controls how long they can keep deferring the tax. And I think when Treasury looked at what Congress was trying to do and looked at the legislative history, which talks about specifically a six-month period of deferral, it made a reasonable determination that this period of deferral for the tax law purposes should be limited to one six-month window. Because after that six months, the taxpayer is free to make a decision to stop making any purchases and sales, and then they can sell free and clear of 16B. Or, you know, if you construe 83C3 as allowing continued deferrals, they can keep making purchases and sales and keep themselves avoiding the tax. And I don't think that's what Congress intended. And when Treasury looked at this and looked at the legislative history, they promulgated this regulation that limits it to that first six-month period. And I think the regulation and these examples, which were cited below, they're in our briefs in summary judgment on page 411 through 412 of the legislative record, that makes clear that you cut it off at six months for each purchase. And I think that that error in not applying the regulation caused the district court to come up with a much more extensive deferral than is appropriate under the statute. Okay. Thank you very much. Thank you. We'll give you some rebuttal time. Thank you. May it please the Court, good morning. My name is Daryl Hallett, and with me at the Council table is Corey Flanders-Palmer, and we represent Mark and Bernie Strong, who are the plaintiffs in this case. You know, in this case, like many tax cases, some things may be clear and some things may be foggy. One thing that is very clear in this case is the government has not pointed to one case that it relies on that even addressed the issue of whether or not vesting constitutes a purchase, let alone decide that vesting constitutes a purchase. And Your Honor is right. That Montgomery case, you can't even tell from the facts in the published decision whether there was a vesting within six months of the exercise, so it may be irrelevant. And that was not an issue there. It wasn't an issue in Tanner. It wasn't an issue in any of those cases. Only two cases exist that any of the parties have been able to find. One is Dreiling, and Dreiling did address the issue, did address the question as to whether or not vesting can constitute a purchase that triggers Section 16B liability, and the defendants in Dreiling said, just like the government here, it's the grant. Regardless of any conditions, it's the grant. The grant's long gone. And this United States District Court for the Western District of Washington said, refused to grant a motion dismiss on that ground and said, the securities law does not address the issue where a granted option is unvested, and whether the vesting constitutes a purchase. And indeed, the Dreiling court was right. There is not one statute. The statute involved here is Section 16B of the Securities Act, and Section 16B says a purchase and sale of the security. It doesn't define a purchase in the case of an option. It doesn't do it. It seems incredibly amazing that in neither the tax laws nor the securities law has anybody addressed this, given the fact that I gather it happens every day, that options are distributed exactly like this. Well, there's a body of law in 16B, as Your Honor is probably familiar with, but as Jacobs, one of the commentators, says, you know, the amount of the cases doesn't illustrate the severity of the law because most insiders, they avoid it like the plague. They just avoid it because Section 16B is construed very, very liberally in favor of the plaintiff and against the defendant. The term purchase is construed against the defendant. So there's nothing in the statute, and there's nothing in the rule. The government, they say, it's so frustrating, Your Honors, they say the grant is the purchase date. They've not pointed to one rule, not one rule, that says the grant is the purchase date. The only rule, and the government agrees on this, that deals with what constitutes a purchase of the underlying security in the case of an option is the rule that says the establishment of a call equivalent position constitutes the purchase of the underlying security. That is kind of like gibberish, but when you boil it down to me, what it means is the establishment of a position. Now, there's nothing more in the rules that define what an establishment of a position is with respect to an option that's granted and unvested or vested, but I submit on the face of it, it doesn't appear to be the establishment of a position when an option is unvested. You've got a mere expectancy, particularly if you've got to perform the services in the future. And I think that Section 83A regulation, Your Honor, does have some bearing here. It's interesting that under 83A, the performance of services does give rise to a substantial risk of forfeiture, and I think it's got some bearing on whether the performance of services in 83C. I'm assuming there's a reason that you didn't invoke it, and I don't have to know what it is. No, I'm just saying I think it relates to whether or not services should be deemed significant here under 83C and Section 16B, because they are very significant. So there's nothing in the statute. There's nothing in the rule. There's good common-sense arguments. So back up a minute. What would you propose as the subject-to-suit interpretation? It seems to me that given what you think is the strength of your vesting argument, that you don't really need the frivolous standard, and you could do with something higher than that. Is there any reason that we have to actually decide that the government's proposition as to the meaning of the subject-to-suit is wrong for you to win? Well, you might disagree with me as to how strong I think my position is. But what I do, I hear the government say now, because I, too, have been confused throughout, and I'm easily confused, but confused throughout this, what do they say the standard is? And I think in their opening brief, they said the standard is whether there would be liability. Now, what I hear now, they're not arguing that. They're arguing something less. And, Your Honors, I think the Rule 11 standard. What about a motion to dismiss standard? Isn't that a little better? I think that's okay, and I don't think it's that far off of a Rule 11 standard. I tell you, we counsel. We don't throw out a motion. The Rule 11 standard, as I understand it, is one level more deferential to the lawyer. It's not whether he would survive a motion to dismiss, but whether he could reasonably think he would survive a motion to dismiss. No, I don't think so. I think the Court has said, I think this Court has said in Hudson, that it's an objective test, not a subjective test. I stated it as a subjective test, but it doesn't require that he actually be able to survive the motion to dismiss as opposed to reasonably thinking he could survive the motion to dismiss. Right, but what the Rule says, it says that it requires, the position is warranted by existing law or a non-frivolous argument for interpretation, clarification, or change in existing law. And a non-frivolous argument is different from sufficient to survive a motion to dismiss, because if you have a statute, if you have a complaint with an allegation of facts, you don't go behind the facts, but you do go behind the law. So in order to survive the motion to dismiss, you have to have a viable legal argument, although it doesn't have to survive on the facts. I understand. But what I'm saying is under Rule 11, it's not just some pie-in-the-sky esoteric legal argument that might stick one in a hundred times. Suppose the standard was surviving a motion to dismiss. Could you survive that in this case? I hope so, because I think we clearly could. As I said, I think we've got common sense on our ground. I think we've got the lack, as the district court said, of any precedent, of any precedent whatsoever. You look at the statute, you look at the Rule, and then we go to what the SEC says about the Rule when they changed it in 1991. And what they hang their hat on there when they changed the Rule, that it's not the exercise that's the trigger. They went to the ownership of an option is functionally equivalent to the ownership of the stock. Well, if it's not vested, it's not owned. And it is no certainty that they talk about that it will ever be vested. And you don't know. The holder doesn't know that it's ever going to become vested. Now, the government says, I think it's assumed here, oh, vesting was a certainty. Well, how do they deal with the fact that when Ms. Strong resigned from that company in June 30, 2000, she walked away from options on 489,000 shares. Out of 750, over half of them that hadn't yet vested and would vest in the next year or so, at the market price that she walked away from, $10 million. And part of the reason she did is she was frightened. And this is in her deposition and in the record of getting sued. Other people in that company weren't as cautious as she was. And she indeed was cautious. She held, except for de minimis shares, she held that stock all the way down. She didn't join everybody going out and sell it. Because this subject to suit, she was, during the last period, she was president of this Ventures, one of the key parts of the company on mergers and acquisitions. That's a high-level position. And she knew it was a high-level position. So, Your Honor, I say, 12B6, we survive, and Mr. Dreiling survived. That's the best evidence of it when it has been raised. Now, let me just go to these new arguments and this one that was raised here. This argument that vesting, if vesting is a purchase, you have to trace the shares and you've got to go six months of those shares that vested. And for those shares, the deferral ends in six months. Now, number one, that argument was not even suggested to the district court. The example the government relies on, the regulations, was not even cited to the district court. I say, Your Honor, that it's a miscarriage of justice to allow parties to sit back. In the appellate section of the Justice Department, I have a high regard for them. But just because they've got separate lawyers, as the Tenth Circuit said, you've got to fire all your guns in the first trial and you don't hold them back. That issue was not raised and it should not be considered. If it is considered, the gun ---- It's a purely legal argument, though, is it not? Pardon me? It's a purely legal argument. I mean, its application isn't legal. You'd have to ---- But the question of whether it pertains or not is a purely legal argument. But to resolve it, the sin with it, you're right. Whether or not there's a rule of six months from each vesting, that's a question of law. But to resolve it, you need a myriad of facts as values and basis. So what happens? If you do that, you have to throw it back down to the district court. And another five years goes by before this thing gets resolved. But on this one, I say if you are going to resolve it, the government admits that its interpretation is contrary to the securities law, is contrary to Section 16B, is contrary to the Gratz case that says shares are fungible. And more significantly, the government admits that if Strom would have sold her shares within six months, she would have been subject to suit because the Gratz law, the Gratz rule applies there. Now, the tax law and the securities law shouldn't be at odds with each other. And the capper, Your Honors, is under Chevron in the cases, if we're looking at the validity of a regulation, is it plainly inconsistent with the statute. Section 83C3 says so long as the taxpayer may be subject to suit, there's a substantial risk of forfeiture. It doesn't say six months. It doesn't say six. The problem, what generated this is, I understand it, is that the incentives are opposite with regard to the securities law and the tax law. In that, in the tax circumstance, if you can extend your period of non-sale, and it's advantageous to do so, say, because the stock is tanking or because the stock is very high, more likely, you can just set it off by buying and selling some stock. That's what they're concerned about. Well, it cuts both ways. The market price can go up. Market prices do go up. And the government comes in and argues in that situation, the government argues that it should be the higher price. But my point is 83C3 was enacted to accommodate potential liability under the securities law because it is a real potential liability. And you have a statute that's specifically enacted to accommodate the securities law and then to come in and say, well, even though the securities law would make the taxpayer subject to suit, we're going to drop down an arbitrary six-month period, especially if there's nothing in the plain language of the statute and the legislative history. We've cited the conference report that says, as long as the taxpayer may be subject to suit. So I think that's clear. It's inconsistent with the statute. There's no justification for it. And the tax law shouldn't send a taxpayer out selling to violate the securities law. That is crazy. That's not good tax policy. Now, let me address just very quickly. I'm losing track here. I'm going to do my 15 minutes. But this business. What about the pooling issue? The pooling issue. Okay. The pooling issue, I think, is very simple. The regulation says a restriction to comply with the series release 130 and 135. And the government and the district court, with all due respect, said you only look at 130 and 135. You don't look at the accounting bulletin that interprets it. Well, that just doesn't make sense to me. And the accounting bulletin said, yes, there can be pre-merger restrictions on sales and suggested a 30-day period, but said others are available. So, again, I go to the plain language of the regulation and the law that says that this accounting staff, they're there to give interpretations of the rule. What governs here? Her own assessment or the company's official rules? Well, it's not her own assessment. She just happened to be president of the company and made the policy way back before this thing ever arose, way back in 1999. The consequences of failing as a pooling are just drastic to a company because the earnings go way down, you've got depreciation and all that. So they adopted, admittedly, at her suggestion, not to defer. She wasn't thinking about deferring. To avoid the failure on pooling and said that we're going to have it 30 days from the date of announcement. That's what prompted it. It was a pragmatic, again, security's law is oftentimes construed very liberally in favor of plaintiffs. But ordinarily, the company's policies don't determine tax law. So what I'm trying to find out is, is it the company's policy, which I gather is not itself in the record, that determines here, or her assessment of complying with it or the government's? I mean, what's the governing question here in terms of what we're looking at? Well, first of all, it is in the record. It's in her deposition testimony and there's two e-mails. Not the actual physical. But there wasn't a formal written policy. But I think, to answer your question, the regulation says a restriction, well, a restriction means something designed by the, imposed by the company, to comply. So I think that brings into play company restrictions that are designed to comply. They suggest maybe a 30-day period pre-merger. And is that enough for your purposes? No. No, because it's not because Ms. Strom had the company adopt a more conservative rule  So that issue, Your Honors, is really largely a moot one. We get to December 23, 2000, under the Section 16B argument. And I understand now the government concedes in the reply brief that liability under Section 16B does not terminate with officer status. It goes on for after the officer status if there was a purchase. And here there was a vesting of purchase on June 23, 2000. So the government concedes that. And, again, that's blatantly a new issue. But I'll get over that. But she clearly had officer status. She was president of this very important subsidiary. She had the same function she did before, determining whether or not these merger and acquisition candidates fit the model for the company. She interfaced with the board of directors and the lawyers. I mean, she was an officer up until she resigned within the meaning of the security laws on June 30. Mr. Hallett, let me see if you can respond and tell me whether I understand what your case is about here. And that is you say the last vesting was on June 23, 2000. Yes. So the six-month period, according to your position, would then run from that date with regard to all options which had vested by then, I suspect, so that by December 23, that six-month period would have run out, I think, if I'm right. That's correct. It runs out under 16B. Under that kind of an analysis, it wouldn't make any difference whether you said a suit had to satisfy or fail Rule 11 or it had to be a meritorious suit. It wouldn't matter, would it, the six months? Well, it doesn't matter at the end of the line, if I understand you. Yes. What matters is our position is she's subject to suit under 16B until December 23. But it matters critically to get you to December 23. Yes. Because if you took the government's view, it would have run out long before that. Well, if you took this six-month rule, this same share's view. No, but if you took the acquisition view, that is that she was not subject to suit after six months from the acquisition of the options. The grant. The grant. You're right. That's a key issue. That is really the key issue here. So if we start the running on June 23, the vesting, then we affirm the district court for that reason and we don't have to talk about the suit being valid or frivolous or not or anything? Well, if you find that she was subject to suit at the time of the and for six months after the vesting on June 23, then, yes, the district court should be affirmed. The only issue remaining then is the pooling kicks into gear. If we're correct on the pooling and it's 30 days prior to the announcement, it takes us over on this go-to net merger into early January, which frankly doesn't make an awful lot of difference. Okay. Thank you very much. Thank you for your patience. Thank you for giving me a little bit of additional time. I'll give you two minutes. Go ahead. I think with regard to the point about whether the question of Treasury Regulation 1.83-3J was raised, in our briefs on summary judgment, the government specifically pointed out this regulation and cited from the Tanner case, which explains how it works and how the deferral for each purchase only extends for six months. So I think that that issue was definitely raised below, and in all of it, as Your Honor pointed out, it isn't a legal issue. But it only pertains to getting from December 23rd to January 20th. Is that right? No. For each exercise, there's a six-month window. But you wouldn't be spanning all the time anyway if you did it by the vesting way? Well, I think the ultimate conclusion of the district court was if vesting is purchased, then everything gets pushed back to December 23rd, and that's just fundamentally wrong. That's what I'm saying. So if you accepted the vesting thing, the pooling thing would only matter. I mean, this question would only matter from December 23rd to January 21st, or it wouldn't even matter for that. That is not correct. The Treasury Regulation I'm referring to is the one that says for each purchase, there's only six months of deferral under Section 83-C-3, and that it's not something that continues as long as the securities law. That's what I'm asking. The way the facts fall out, and I don't know the answer to this, would it nonetheless be true that if you started from each vesting date and went six months forward? I guess it would matter because you would then start attributing income. Each time a vesting date reaches the six-month mark, you have to value the stock. Is the judge ruling that question? The district court treated everything as deferred until December 23rd, 2000. He was assuming the rolling. At each transaction and say, when was this purchased? When did six months expire? Because he was assuming a rolling. He's assuming a rolling. And he was assuming it, even though you say you raised the question and he never ruled on what you asked. He never addressed that. He simply assumed a rolling deferral, which is not correct. And I think that, at a minimum, this case needs to be remanded for correction of that. That argument of yours, you do put the taxpayer in the position of, okay, I'll go ahead and sell this because the time has expired. And then I'll be sued under the securities law because I'm getting new options all the time. Well, I think the taxpayer has some control over this. The taxpayer is an insider in the corporation. And only insiders who have positions of authority in a corporation, like an officer or director, are going to have 16B issues at all. And in that context, they have some negotiating power with the corporation. They can negotiate an arrangement that would give them a window to sell. And it's only in that first six-month period that there's no choice in the matter for the taxpayer. And I think that's what Congress and the Treasury Department with this regulation were trying to achieve. But I don't think we have to reach that issue here because I think, you know, our primary argument is that the grant aid is the vesting date. And I think the magma power decision goes to the rules on that. I'm sorry? If you were a securities lawyer rather than a tax lawyer with regard to this vesting issue, it seems to me the government's position in this tax case on the vesting issue is completely against the government's interest in their securities guys. Because you would have a situation essentially where under the circumstances like this in which you have vesting over time dependent on employment, as a practical matter the six-month rule would never apply. I'm sorry? The six-month rule would never apply if the grant was the date and not the vesting. Well, I think what the ‑‑ As a practical matter, at the time when you'd want the six-month rule to apply, i.e., at the time when the taxpayer had some ability to manipulate, it wouldn't apply. Well, if you read through the SEC releases, and I think the Second Circuit's opinion in magma power is very good at explaining those releases, what the SEC determined is that, number one, they needed a bright line rule with what was a purchase. And, secondly, that in their view that when you acquire ‑‑ when an insider who has a big interest in a corporation and a lot of insider knowledge acquires the option, and to get that option, factors are within their control. They have to just stay employed. They have to keep their job. And they're pretty sure this money's going to come to them, that they have the ability to buy and sell on their insider information. And so the SEC made a determination that really, from its point of view, what does matter is when you acquire the option. And in those releases, certainly it's very common. But was that in the situation in which there was the vesting didn't occur until later? Did they address that problem? No. They did not address that problem, but they did carve out an exception for where the option doesn't have a fixed price, which indicates certainly that they knew how to carve out an exception if they wanted to. And in this situation in dealing with vesting, it's very common for there to be the later vesting stock options. But what this means from a securities point of view is that the taxpayer can, on the same day, exercise the option and sell it on the first day that it vests. Because they couldn't do it before that. They could exercise the option and sell it, which is exactly the kind of short-term manipulation that the rule's concerned about. Well, if you read through the, I think, the Magnum Power decision and the SEC releases, that seems to be not the determination the SEC made. And I'm not a securities lawyer, so I'm limited to what's public. But we have no indication that the SEC's ever addressed precisely this. The situation is. As common as it is. Well, there's no express. You're correct, Your Honor, that as far as I can tell, in the 1991 release, there was no mention of it. But certainly in the 1996 release, they did go back and revisit this issue. And then, you know, with the benefit of hindsight and several years of going over this, again, they didn't specifically address vesting per se, but they didn't reopen that issue. And I think there's a no action letter from the SEC that's cited in our brief, the Foster and Peppermint letter. And there they indicate that vesting would not make a difference. And so I think, you know, there have been plenty of opportunities for them to look at, does vesting make a difference? And they haven't come forward and said anything. And I think from that silence, we have to take that they didn't mean a different rule for that. Okay. But at all events, you know, I think the real issue for the government here is that the standard needs to be something higher in terms of the risk of liability for the deferral and the tax laws to apply. Okay. Thank you very much. Thank you very much for your time. We had said you could have more time. I don't know if you want it. I mean, you have a fourth argument. I'm not sure you want a fourth argument, but. Okay. Thank you very much. All right. So the strong case is submitted and we are in recess. Thank you. Those were good arguments. Yes, they were. I want to compliment both lawyers. Very good. Thank you. All rise.
judges: Canby, Thompson, Berzon